TOBIN, ADMX., APPELLEE, *v.* DETROIT, TOLEDO & IRONTON RD. CO., APPELLANT.

(Decided August 19, 1937.)

*Messrs. Cable & Cable,* for appellee.

*Messrs. Bodman, Langley, Bogle & Middleton* and *Mr. Melvin C. Light*, for appellant.

CROW, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Allen county, Ohio, rendered on a verdict for plaintiff in the amount of $8458.33, accompanied by a finding, answering an interrogatory submitted by defendant, which interrogatory and finding are respectively in the following words:

"If your verdict is for the plaintiff what act or acts of negligence do you find the defendant committed? Answer: The rough, violent sudden jerking or stopping of the cut of cars caused brakeman to slip on the slippery running board of the tank car in the cut."

The allegations of the amended petition are:

"(1) The plaintiff is the duly appointed, qualified and acting administratrix of the estate of her husband, James R. Tobin, deceased, having been appointed by the Probate Court of Allen county, Ohio, on June 11, 1935. The said James R. Tobin was killed as hereinafter set forth on March 20, 1934. At the time of his death, he left his wife, Gertrude A. Tobin and two minor children, James R. Tobin, age 15, and Dama Tobin, aged 12, wholly and solely dependent upon the deceased for their support.

"(2) This action is brought by the plaintiff for the benefit of herself as widow and their two children, James R. Tobin and Dama Tobin, above mentioned.

"(3) Defendant is a corporation, a common carrier of freight and passengers, and at all times hereinafter referred to, plaintiff's decedent and defendant were engaged in interstate commerce.

"(4) Defendant's line of railroad extends in a northern and southern direction in the states of Ohio and Michigan and at Hamler, Henry county, Ohio, crosses the main line of the Baltimore & Ohio Railroad Company at right angles. Defendant railroad, for

the purpose of exchanging cars with the Baltimore & Ohio Railroad Company, had constructed and was maintaining a transfer track which connects with the main line of the defendant at a point about four hundred yards north of the Baltimore & Ohio Railroad tracks, and curving thence south and west, connected with the tracks of the main line of the Baltimore & Ohio Railroad Company at a point about four hundred yards west of the main line of the defendant.

"(5) Plaintiff says that James R. Tobin was and had been employed by the defendant, Detroit, Toledo & Ironton Railroad Company, as a brakeman; during the night of March 20, 1934, said decedent was assisting in the operation of a local north-bound freight train of defendant, in charge of a conductor and engineer, superiors of plaintiff's decedent; that about 1:00 o'clock in the morning of March 20, 1934, said freight train having reached the village of Hamler, the crew disconnected said train at a point immediately south of the Baltimore & Ohio Railroad Company tracks and had gone forward with the engine tender and front caboose and backed into the said transfer track to pick up six cars on said transfer track; that after coupling said cars onto the engine, defendant's said crew was proceeding northward on said transfer track and onto the main track of the defendant with said cars intending to back down and couple said cut of cars onto the main part of defendant's said train.

"(6) Plaintiff says that two of the cars so picked up on said transfer track by defendant were tank cars, used for the transportation of gasoline; that around each tank on said car was a running board made of planks, approximately one foot in width; that the said tank cars were in the south end of said cut of cars, the next to the last tank car was destined to a point in the State of Michigan; in order to cut said tank car from the train at the next switching or transfer point

north of Hamler, it was intended to place the same at the front of said train and coupled next to the engine.

"(7) Plaintiff says that the running board on said tank car was the only means afforded plaintiff to use to cross over said car, that the same was not secure, as required by the Federal Safety Appliance Act, as amended, in that said running board, particularly that part located on the south end of said tank car, and extending across immediately south of the tank of said car was made of wooden planks uneven in that they permitted water, frost and ice to accumulate thereon and freeze, become slippery and unsafe for plaintiff's decedent to work upon.

"(8) Plaintiff's decedent, in the scope of his employment as brakeman of defendant, climbed upon the southwest corner of the running board of said tank car and in the furtherance of his duties for defendant and while said cut of cars was proceeding northward onto the main track of defendant company, because said running board was not secure and the other causes hereinafter referred to, slipped on the frost and ice collected on said running board and fell between said tank car and the tank car immediately following.

"(9) Plaintiff further says while plaintiff's decedent was on said running board and attempting to walk on the same from the west to the east side of said train, said cut of cars was being hauled northward by defendant; that defendant caused said cars to be jerked and jolted without notice or warning to said decedent, causing plaintiff's decedent to slip upon said running board, falling between the two tank cars and upon the east rail of said track and as a direct result plaintiff's decedent was run over by a car of the defendant company, his head, arm and shoulder were crushed and his head and arm severed from the body, causing plaintiff's decedent's death.

"(10) Plaintiff says that at all times hereinafter referred to, the condition of the weather was cold, the night was dark, visibility poor and defendant company failed to maintain lights so as to disclose to plaintiff's decedent the slippery condition of said running board on said tank car.

"(11) Plaintiff further says that by reason of the curve of the said transfer track and the fact the engineer could not from his side of the cab see signals given for his benefit in the movement of said cut of cars, said engineer relied upon his fireman and the fireman in turn relied upon the conductor of said train; that said conductor failed and neglected to give proper signals to said engineer in the management of said train so that the engineer caused said train to be suddenly jerked without notice to plaintiff's decedent.

"(12) The conductor of said freight train was plaintiff's decedent's superior and had charge of the transfer of said cars to the main line of defendant company. Said conductor allowed said cut of cars to be operated without warning plaintiff's decedent of the jolts and jerks and movement of the same, thereby causing plaintiff's decedent to slip and fall between the tank cars where plaintiff's decedent met his death.

"(13) Plaintiff says the engineer of said train failed to give plaintiff's decedent any warning or notice of the proposed jerking movement of said cut of cars as herein set forth.

"(14) Plaintiff says the car immediately south of the car on which plaintiff's decedent was working was also a tank car, that the hand hold or grab irons on said tank cars are so located that it is not possible to reach from the hand hold or grab irons on the tank car on which he slipped and fell, was thrown by jolts and jerks towards the last tank car but was not able to reach and catch hold of a grab iron or hand hold on the last tank car; that because of the foregoing and

the slippery condition of the running board, defendant failed to furnish plaintiff's decedent with a reasonably safe place on which to work.

"(15) Plaintiff's decedent's death was due wholly and solely to and was the direct and proximate result of the negligence and carelessness of the defendant as herein set forth, and particularly in that:

"(a) Defendant violated the Federal Safety Appliance Act as amended in that it failed to furnish plaintiff's decedent with a secure running board on which to carry on his duties as brakeman in the employ of defendant.

"(b) Defendant failed to exercise ordinary care with respect to providing plaintiff's decedent with a reasonably safe place on which to work and a reasonably safe system of switching cars as herein set forth.

"(c) Defendant failed to maintain a properly lighted place in which plaintiff could work, having in mind the slippery condition of the running board.

"(d) Defendant failed to connect all of the air brakes of said cars of said train so that in attempting to move and stop said train, the same was not under control, directly causing jolts and jerks in the operation of said cars.

"(e) Defendant failed to give warning to plaintiff's decedent of the sudden jerks and jolts in the movement of said cut of cars.

"(16) Plaintiff's decedent, James R. Tobin, prior to his death, was 37 years of age, robust and strong, and earning and capable of earning two hundred and fifty ($250) a month in his occupation as brakeman for defendant. He left surviving him and wholly dependent upon him for support, Gertrude A. Tobin, James R. Tobin, a son, 15, and Dama Tobin, a daughter, 12 years, for whose benefit this action is brought.

"(17) By reason of the negligence of defendant as aforesaid, the widow and children of plaintiff's dece-

dent have been deprived of his support, all to their damage in the sum of Fifty Thousand ($50,000) Dollars.

"Wherefore plaintiff prays judgment against the defendant in the sum of Fifty Thousand ($50,000') Dollars."

Defendant's answer is:

"Defendant admits it is a common carrier of freight and passengers' and owns a railroad extending in the states of Ohio and Michigan, as alleged in the petition, and that James R. Tobin was employed by the defendant as a brakeman, and that on the night of March 20, 1934, said employee was so employed as a brakeman on a north bound freight train of the defendant, and that the crew with whom said employee was working did transfer six cars from a transfer track at Hamler, Ohio, to the main line of defendant's railroad, and that two of said cars were tank cars, but that the same were not the property of the defendant. Said tank cars were constructed as required by the Federal Safety Appliance Act, including the running board.

"Further answering, defendant denies the allegations of the amended petition not herein specifically admitted.

"By way of further defense, defendant says that if any negligence contributed to the death of said James R. Tobin, it was not in any wise the negligence of the defendant, and that said decedent as such employee assumed the risks and hazards incident to such employment and necessary in the operation of said freight train."

Plaintiff replied as follows:

"Now comes the plaintiff and for reply to the answer of the defendant, denies the allegations in the answer of the defendant which are not admissions of averments contained in the amended petition and further specifically denies plaintiff's decedent assumed

the risk of the slippery and unsecure running board of said tank car; that plaintiff's decedent went on said running board in the scope of his employment and under the direction of his superior, the defendant's conductor in charge of said train, and without knowledge that said running board and tank car were insecure and in an unsafe condition in violation of the Safety Appliance Act."

The liability sought to be enforced is exclusively established by federal statutes which we quote:

Title 45, Section 51, U. S. Code. "Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment. (Apr. 22, 1908, c. 149, Section 1, 35 Stat. 65.)"

Title 45, Section 11, U. S. Code. "It shall be unlawful for any common carrier subject to the provisions of this chapter to haul, or permit to be hauled or used on its line, any car subject to the provisions of this chapter not equipped with appliances herein provided

for, to wit: All cars must be equipped with secure sill steps and efficient hand brakes; all cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards, and all cars having ladders shall also be equipped with secure hand-holds or grab irons on their roofs at the tops of such ladders: *Provided,* That in the loading and hauling of long commodities, requiring more than one car, the hand brakes may be omitted on all save one of the cars while they are thus combined for such purpose. (Apr. 14, 1910, c. 160, § 2, 36 Stat. 298)."

Title 45, Section 7, U. S. Code. "Any employee of any common carrier engaged in interstate commerce by railroad who may be injured by any locomotive, car, or train in use contrary to the provision of this chapter shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, car, or train had been brought to his knowledge. (Mar. 2, 1893, c. 196, § 8, 27 Stat. 532)."

In addition to certain essentials of plaintiff's case admitted by defendant's answer or conceded by defendant during the trial, plaintiff introduced evidence in proof of these facts: Tobin, plaintiff's decedent, had long been a brakeman on defendant's railroad, and about two o'clock in the morning of March 20, 1934, he was a member of the crew on a freight train of defendant drawn by a steam locomotive; the others of the crew were the conductor, engineer, fireman, and another brakeman; defendant's track was intersected by the line of another steam railroad at which intersection the two railroads maintained a transfer track where four tank cars had been left by the other railroad, to be taken into defendant's train; immediately behind the locomotive and its tank was the caboose followed by three box cars, and thus was the train made up; it backed southward onto the transfer track

to take the four tank cars to which the conductor went for the purpose of checking them; Tobin was on the south end of the last car of the train as it approached the four tank cars, one of which was to be cut from the rear and afterward placed ahead of the other three in the train on the main track; Tobin, as brakeman, was to make the coupling of the train with the four tank cars, which he did in the presence of the conductor who then went to the west side of the rear of the freight car immediately ahead of the first of the four tank cars, and Tobin proceeded toward the rear of the latter to make the cut of the last tank car; each of the two men carried a lighted lantern; neither had anything to do at the east of the transfer track or any of the cars; it was Tobin's duty to initiate and give with his lantern the necessary signals to the locomotive for the entire switching operation; the curve in the transfer track was such as to require the signals when given by Tobin to be passed at once to the locomotive, by the conductor, which was done; when the first of the four tank cars was touched by the box car next to it the coupling was made by Tobin pursuant to a signal given by him; the locomotive was controlled by its own air brakes as were the cars involved in the switching operation; the conductor was the person who last saw Tobin alive as the latter went to the four tank cars; immediately after the coupling had been made all the cars moved forward until a point was reached where the signal was to be given by Tobin, for the necessary stop for the cut of the last tank car; all the cars had been slowed to some extent by the locomotive in anticipation of the signal when the conductor alone observed a lantern signal to stop, given some place on one of the tank cars; this signal was sent forward by the conductor who, because of the darkness, could not see the person giving the signal; the light from the lantern then disappeared and the cars

stopped, whereupon the conductor hurried southward and found Tobin's dead body on the transfer track, his head lying east of the east rail, apparently severed from his body by the wheels of the rear truck.

In view of the jury's answer to the interrogatory, it is unnecessary to comment on any ground of claimed negligence other than insecurity of the running board and negligence in stopping the cars to make the cut of the last tank car.

Defendant's statutory duty concerning the running board was measured solely by the provisions of the Federal Safety Appliance Act and the orders of the Interstate Commerce Commission, namely, to have the car at all times equipped with a secure running board, wherefore the point now is the intendment of the word "secure," undefined by federal statute.

Some light is found in Roberts Federal Liabilities of Carriers, Volume 2 (2 Ed.), Section 637, page 1228 *et seq.*, and cases there noted.

The word "appliance" itself is of much importance, and when given consideration in connection with the specific enumerations and their purpose and nature, it must be concluded that the word "secure" is descriptive only of the mechanical and structural character and location.

It is beyond doubt that the carrier can become negligent at common law in relation to a running board, "secure," so far as the Safety Appliance Statutes are concerned, which common-law negligence is as well within Title 45, Section 51, U. S. Code, as is the *per se* negligence resulting from failure to have a tank car equipped with a secure running board.

All the evidence in the case was offered by plaintiff and the witnesses were generously cross-examined in behalf of defendant. Of the members of the crew in charge of the train only two were called as witnesses, the conductor and engineer, who testified in substance

that the running board, where the footprints and the imprint appeared in the frost, was of the requisite type, secure, in its place, and not deficient or defective in any manner whatsoever, and was a safe place to work, all of which testimony, by way of cross-examination, was admitted without objection; and there was no evidence whatsoever to prove that the running board as regarded location, construction and maintenance was in any respect otherwise than as the statute prescribed.

These witnesses also testified that the switching operation was made in all particulars in the ordinary, usual and proper manner without jolting or jerking and otherwise unattended by any circumstance indicative of unusuality.

There was no testimony tending to prove definitely where Tobin was when the signal from his lighted lantern was flashed for the train to stop in making the necessary cut of the rear tank car, whether he was standing at the side in the stirrup or on the running board; nor was there any evidence possessing tendency to prove the time when the four tank cars were placed on the transfer track or how long the frost had been on the running board, or when, how or from what place he fell from the car if he did fall, or to account for no wheel of the car other than the wheels from the rear truck of the last car, having passed over his body.

There can not be a recovery by plaintiff unless she proves as part of her case, negligence of defendant in either violating the safety appliance law or negligence at common law, or both. The presumption that defendant had not been negligent, fortified by the testimony of the conductor and engineer, was not met by any evidence establishing negligence of defendant, unless it was met by proof of the presence of frost on

the running board, unattended by proof of any negligent act or omission of defendant.

The court takes judicial notice that the transfer track was located where frosts arising from climatic conditions, regularly and repeatedly occur during certain months, which must have been known to Tobin by reason of his long service.

Generally stated, the law is that the falling of snow and the natural formation of ice does not in itself constitute evidence of negligence of a railroad in respect to its property, but negligence may occur in relation to snow and ice, and we see no reason why the rule should not apply to frost.

In every instance, however, there must be actual or constructive knowledge by the carrier, of the snow, ice or frost attended by the carrier's negligent action or omission, before there can be liability.

In this case there was no such situation.

Assuming, without deciding, that the jury would have been justified in finding the frost to have been slippery as to which there was no testimony and that Tobin fell from the running board where the foot prints were found and that the switching movement shown by the testimony to have been free from any negligence caused his fall, plaintiff failed to prove her case because actionable negligence at common law was not proved. On this feature of the case it is enough to say that, inasmuch as the risk of danger to him involved in the answer to the interrogatory was an ordinary one normally incident to his occupation and not proved to have been affected with negligence of defendant, he assumed such risk.

The record before us not showing either negligence by violation of the Safety Appliance Statutes or at common law, the judgment must be reversed for error

in overruling defendant's motion for a directed verdict in its favor.

*Judgment reversed.*

GUERNSEY, P. J., and KLINGER, J., concur.