## BARRY v. READING CO.
### No. 8583.

Circuit Court of Appeals, Third Circuit.

Argued May 5, 1944.

Decided July 10, 1944.

Reargued Dec. 8, 1944.

Decided Dec. 29, 1944.

Writ of Certiorari Denied April 2, 1945.
See 65 S.Ct. 912.

BIGGS, Circuit Judge, dissenting.

Harry G. Fuerst, of Cleveland, Ohio (Samuel Shapiro, of Newark, N. J., and Milford J. Meyer, of Philadelphia, Pa., on the brief), for appellant.

George Gildea, of Trenton, N. J. (Katzenbach, Gildea & Rudner, of Trenton, N. J., on the brief), for appellee.

Before JONES and GOODRICH, Circuit Judges, and GANEY, District Judge.

PER CURIAM.

Ralph E. Barry, of whose estate the plaintiff is administratrix, was killed while in the performance of his duties as

a brakeman for the defendant railroad company, both Barry and the railroad being then engaged in interstate commerce. The plaintiff instituted suit for damages for Barry's death under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., which furnished the exclusive remedy in the circumstances. The right of action conferred by that statute rests upon requisite proof of the employer's negligence as the proximate cause of the employee's injury or death.

■ Upon a trial of the case, the jury returned a verdict in favor of the defendant upon which the District Court entered judgment. The result, from which the plaintiff now appeals, was obviously a serious blow to her and her minor child who lost the support of husband and father through his accidental death while discharging the duties of his employment. But, a careful search of the record fails to disclose any reversible trial error and the learned trial judge, in a charge both fair and adequate, left it to the jury to say whether the employee's death was the result of the defendant's negligence as charged by the plaintiff. The jury, by its verdict, having answered that question in the negative, there is nothing under the law for us to do but affirm the judgment of the District Court.

## On Rehearing.

Before BIGGS, JONES, GOODRICH, and McLAUGHLIN, Circuit Judges, and GANEY, District Judge.

JONES, *Circuit Judge.*

Four of the five members of the court in banc which heard the reargument of this appeal remain unable to see wherein the trial record presents reversible error.

■ The plaintiff's misfortune, so far as recovering damages adversarily for the death of her husband is concerned, lies in the fact that, the responsibility being hers under the law[1] to prove that her husband's death resulted from the defendant's negligence, a jury, after a fair and impartial trial, returned a verdict for the defendant.

■ At a former time we had occasion to observe the irremediable loss that can arise because of the fact that there is no federal compensation law covering employees of railroads engaged in interstate commerce.[2] It is, indeed, unfortunate that that should be so, particularly, when, as here, a long-time employee has lost his life in the discharge of the duties of his employment, yet his dependents are unable to obtain recompense for their loss of support. But that is a situation which requires legislative and not judicial correction. Inasmuch as the plaintiff's right to recovery under the Federal Employers' Liability Act depended upon her ability to prove to the satisfaction of a jury that the employer was negligent and that his negligence caused her husband's death, the court below had naught to do, in the absence of reversible trial error, but to enter judgment on the jury's verdict; and, by the same token, we on our own part are equally without right to disturb the judgment.

■ In the instant case, no material or relevant evidence was ruled out at trial nor was the reception of any improper evidence made the subject of valid exception. On the basis of the record before us, there can hardly be any difference of opinion as to that. The case was submitted to the jury in a charge to which plaintiff's counsel took *no exception in any presently material connection*, either as to fact or law. That the trial court did not instruct the jury concerning the respective dimensions prescribed by the Interstate Commerce Regulations[3] for the square fit of a brake shaft and its accompanying ratchet wheel, as a means for determining whether the equipment was defective, was never alluded to anywhere by plaintiff's counsel until the petition for rehearing in this court; and, it is by no means clear that, even now, the petition for rehearing assigns that as an appropriate basis for reversible error.

■ But, in any event, the dimensions prescribed for the brake shaft and its attendant ratchet wheel are minimum requirements according to the express specifications of the Regulations. Thereby, a clearance of one-sixteenth of an inch between the shaft and the ratchet at the place

[1] Federal Employers' Liability Act of April 22, 1908, c. 149, Sec. 1, 35 Stat. 65, as amended by the Act of August 11, 1939, c. 685, Sec. 1, 53 Stat. 1404, 45 U.S.C.A. § 51.

[2] See Mastrandrea v. Pennsylvania R. Co., 3 Cir., 132 F.2d 318, 319.

[3] Promulgated pursuant to authority contained in Sec. 3 of the Safety Appliance Act of April 14, 1910, c. 160, 36 Stat. 298, 45 U.S.C.A. § 12.

of their intended square fit mathematically appears. But, no maximum measurements for either the brake shaft or the ratchet wheel at the point of their assembly are prescribed. And, consequently, no definite maximum of clearance between the two appears thusly. Nor is any maximum of clearance elsewhere prescribed. In that situation we are unable to see how a court could say, as a matter of law, that the slightest clearance in excess of one-sixteenth of an inch rendered the defendant guilty of negligence per se, regardless of the efficiency of the brake for its purpose.

 The pertinent Regulations were admitted in evidence and the testimony as to the clearance between the brake shaft and ratchet wheel, here involved,[4] was before the jury which had to answer the question which the court fairly submitted, viz., whether the equipment was efficient. No question of equivalents was injected. The defendant's responsibility under the Act was to furnish efficient brake equipment, and it supplied brake equipment, not something else. Whether the equipment which the defendant did furnish complied with the required minimum measurements prescribed by the Regulations (there was no evidence that it did not) and whether the equipment was efficient were questions of fact which the jury had to consider in arriving at its verdict.

We confirm our former decision.

BIGGS, Circuit Judge (dissenting).

The plaintiff is the widow and executrix of Ralph E. Barry. Barry, a brakeman employed by the defendant railroad at its yard at Rutherford, Pennsylvania, was injured while "humping" a gondola car down the railroad yard and died as a result of his injuries. The provisions of Sections 2 and 3 of the Safety Appliance Act, 45 U.S.C.A. Sections 11 and 12, are applicable to the appliances on the car on which Barry was riding at the time of the accident. There is evidence (to be dealt with hereinafter) from which the jury might have found that the car had a hand brake not in accordance with

the regulations promulgated by the Interstate Commerce Commission by its order of March 13, 1911 and that the accident to Barry resulted because of this. The jury rendered a verdict for the defendant. After judgment, the plaintiff appealed.

Section 2 of the Safety Appliance Act provides that a car of the type with which we are here concerned must be equipped with "efficient hand brakes." Section 3 provides that the dimensions and manner of application of the appliances provided for in Section 2 "as designated by the Interstate Commerce Commission shall remain as the standards of equipment to be used on all cars" subject to the provisions of the Act. Two of the Commission's regulations are pertinent. One provides that "The brake-shaft shall be not less than one and one-fourth (1¼) inches in diameter * * *"; the other, that the "Brake-ratchet wheel shall be secured to brake-shaft by a key or square fit; said square fit shall be not less than one and five-sixteenths (1⁵⁄₁₆) inches square."

If a hand brake is not in accordance with the dimensional standards promulgated by the Commission pursuant to Section 3 of the Act, such a brake may not be deemed to be "efficient" within the purview of Section 2. If the accident to Barry was caused by the brake (the brake not being in accord with the regulations), the Act created a liability against the defendant in Barry's favor. Texas & P. R. Co. v. Rigby, 241 U. S. 34, 40, 36 S.Ct. 482, 60 L.Ed. 874.[1] A violation of the Act or of the regulations is "negligence per se." San Antonio & A. P. R. Co. v. Wagner, 241 U.S. 476, 484, 36 S.Ct. 626, 60 L.Ed. 1110.

There was uncontroverted evidence that the brake shaft of the hand brake on the car was designed to be 1¼ inches in diameter and that the square fit of the ratchet wheel was designed to be 1⁵⁄₁₆ inches square. These dimensions correspond with the minimums required by the Commission's regulations. Such dimensions are standard and are found in the brake shafts and ratchet wheels of the hand brakes on most of the

---

[4] According to the testimony, the clearance was given variously at one-sixteenth of an inch or from one-sixteenth of an inch to not exceeding three-sixteenths of an inch. All of this testimony was based upon the witnesses' estimates and not on actual measurements.

[1] Compare such cases as Scarlett v. Atchison T. & S. F. Ry., 7 Cal.2d 181,

60 P.2d 462, 465, where it was held that if the Commission has not prescribed regulations in connection with appliances " * * * the test is whether the appliance is safe or secure within the meaning of the statute, * * *." Cf. Tobin v. Detroit T. & I. R. Co., 57 Ohio App. 306, 13 N.E.2d 739, 743, and Davis v. Reynolds, 4 Cir., 280 F. 363, 365.

freight cars of this country. There was also evidence that the tolerance (designed to be $\frac{1}{16}$ of an inch) between the ratchet wheel and the hand shaft was "from $\frac{1}{16}$ of an inch to $\frac{3}{16}$ of an inch." Photographs in the record show that the brake shaft and the ratchet wheel, at their point of contact, had become worn or rusted. Counsel for the plaintiff insists that he proffered at the trial two pamphlets, one, "United States Safety Appliances for all Classes of Cars and Locomotives," American Association of Railroad edition, and another, "Classification of Safety Appliance Defects," promulgated by the Bureau of Safety of the Interstate Commerce Commission. It does not appear from the record with any degree of clarity that such a profert was made and there are no exhibits marked for identification which correspond to the pamphlets. But we may take judicial notice of their contents, none the less. Each pamphlet classifies safety appliance defects and does so in identical terms. Item 147 of each classification, under the heading "Ratchet wheel" states as a defect in the brake, "Ratchet wheel loose."

The tightness of the fit of the ratchet wheel to the brake shaft is of the utmost importance. When the brake wheel is turned by the brake club in the hands of the brakeman a dog engages with the teeth of the ratchet wheel to prevent the brake chains as wound from unwinding when the brake club is lifted from the wheel by the brakeman before he reinserts it to gain new purchase. If the ratchet wheel is loose it means the "loss" of ratchets from each turn made with the club and a consequent inefficiency in the application of braking power. Barry's accident may have occurred because he was not able to reduce quickly the speed of the car on which he was riding.

I conclude that the regulations require the square fit of the ratchet wheel to be $1\frac{5}{16}$ inches, no less and no more, when the brake shaft is designed to be $1\frac{1}{4}$ inches in diameter. This conclusion is based on several considerations which are set out hereinafter. The word "secure" is used in the regulation to designate the manner in which the ratchet wheel is to be fitted to the brake shaft. The word "secure" means "to seize and confine; as, to secure a prisoner. To make fast; as to secure a door, the hatches of a ship." Webster's New International Dictionary. The antonym of "secured" is the word "loose" used in the classification of safety appliance defects in the pamphlets referred to above. While the regulations under consideration make use of the phrase "not less than" in connection with the dimensions of both the brake shaft and the ratchet wheel square fit, this means only that the respective elements of the hand brake assembly shall not be less than the dimension specified for each considered separately. The minimums are required by the Commission because otherwise the individual parts of the assembly would be lacking in tensile strength. The phrase may not be employed to enlarge the dimensions of one piece of the brake assembly in relation to another.

Examination of the whole body of the regulations demonstrates this, the phrase under discussion being used repeatedly to indicate required dimensions where the parts designated are not correlative. The specifications as to the size of the brake step and of hand rails are examples. It will be observed on an examination of Plate A of the Commission's regulations (wherein the hand brake set-up is depicted and the dimensions of hand brake and ratchet wheel are given at their area of contact) that the brake shaft dimension is stated as $1\frac{1}{4}$ inches and the square fit of the ratchet wheel is given as $1\frac{5}{16}$ inches. Plate A, at another point well down the brake shaft, states the dimension of the shaft as "$1\frac{1}{4}''$ minimum," but this specification relates to the brake shaft alone and is far removed on the drawing from the area of contact of ratchet wheel and brake shaft. No minimum is given in Plate A in respect to the square fit of the ratchet wheel, the dimension of the square fit being shown simply as "$1\frac{5}{16}''$."

The phrase "not less than", used in the regulations in respect to brake shaft and the ratchet wheel, does not mean that a brake shaft $1\frac{1}{4}$ inches in diameter may be equipped with a ratchet wheel the square fit of which was $1\frac{9}{10}$ inches square. Such a fit, which would be within the "minimums" declared by the majority of this court and by the learned District Judge, would permit the ratchet wheel ultimately to engage the brake shaft but only after the brake wheel had been turned through a 90°· angle. A ratchet wheel so fitted would not be "secured" to the brake shaft. Secured means made fast and nothing less. Since the ratchet wheel is slipped over the brake shaft and is not sweated on, the Commission has permitted a tolerance of $\frac{1}{32}$ of an inch at each corner of the square, but no more. Ordinary engineering practice dictates a

tolerance of ⅟₁₆ of an inch as the permissible maximum between brake shaft and ratchet wheel designed respectively with dimensions of 1¼ inches and 1⁵⁄₁₆ inches. The Commission's regulations prescribe the permissible maximum.

What has been said frames the substantial issue which was before the District Court. Evidence should have been directed to this question, and the jury, under proper instructions from the court, should have determined whether or not the brake was in conformity with the regulations. Error arose both in the receipt of evidence and in the court's charge.

The learned trial judge, over the objections of the plaintiff's counsel, permitted testimony to be given by defendant's expert witnesses that the hand brake was an efficient brake without making reference to the dimensions specified by the regulations. The court also permitted testimony to the effect that ordinarily there was play between the ratchet wheel and the brake shaft on many cars of the kind on which Barry was riding. This was prejudicial error. In his charge the trial judge referred to the pertinent regulations promulgated by the Commission but did not explain their significance to the jury, and stated, inter alia, "The test of an efficient hand brake is the performance of the brake in the ordinary, usual and customary manner * * *." The District Judge did not instruct the jury that the hand brake had to conform with the regulations; that, if it did not do so, it was not an efficient hand brake within the meaning of the Safety Appliance Act. He did not inform the jury that the defendant had an absolute duty to use only cars which complied with the specifications; that, if the defendant did not do so, it was guilty of negligence per se. The trial court did not instruct the jury that if it found that the brake was not in conformity with the regulations and Barry's injuries resulted because of the brake, the jury should render a verdict for the plaintiff.

The trial court instructed the jury that the dimensions of the brake shaft and the ratchet wheel fit specified in the regulations were "minimum dimensions only," and gave the jury no instruction as to the meaning of the word "secured." In my opinion these defects in the charge also constituted prejudicial error. The jury was not sufficiently apprised of the issues of fact to be able to render a verdict in accordance with the evidence and was permitted to speculate as to how the brake on Barry's car operated in comparison with hand brakes on other cars of the same type.

In my opinion, the admission of objectionable evidence and the errors in the charge permitted the defendant to apply the prohibited doctrine of equivalents to an appliance specifically embraced within the Safety Appliance Act. See St. Joseph & G. I. R. Co. v. Moore, 243 U.S. 311, 314, 37 S. Ct. 278, 61 L.Ed. 741.

It should be stated, however, that the issues upon which I have dilated were not called to the attention of the trial judge with any great degree of clarity[2] and it is asserted by the majority that for this reason, among others, the judgment of the court below should be affirmed. The proper interpretation and application of the Safety Appliance Act are of paramount importance in this circuit as elsewhere. The Act falls in the same category as the Federal Employers' Liability Act of which Mr. Justice Frankfurter in his concurring opinion in Tiller v. Atlantic Coastline R. Co., 318 U.S. 54 at page 73, 63 S.Ct. 444, 454, 87 L. Ed. 610, 143 A.L.R. 967, wrote, "Perhaps no field of the law comes closer to the lives of so many families in this country than does the law of negligence, imbedded as it is in the Federal Employers' Liability Act." It was the duty of the court below to give a correct interpretation of the provisions of the Act and the pertinent regulations promulgated by the Commission thereunder. This was required of the court whether or not its attention was called to the points at issue by objections to evidence or by requests for charge.

The judgment should be reversed and a new trial ordered.

[2] It would be proper for the trial court in a case like that at bar to call to its assistance an independent engineering expert.