In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-2509

CREATION SUPPLY, INC.,

*Plaintiff-Appellee*,

*v.*

SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14-cv-8856 — **Charles P. Kocoras**, *Judge*.

ARGUED JANUARY 14, 2021 — DECIDED APRIL 26, 2021

Before RIPPLE, KANNE, and ROVNER, *Circuit Judges*.

KANNE, *Circuit Judge*. This appeal is part of an ongoing, decade-long, three-lawsuit fight between an insurer, Selective Insurance Company of the Southeast, and its insured, Creation Supply, Inc. ("CSI"), over who owed what when.

The issue here, though, is a narrow question of statutory interpretation—whether the district court properly awarded

extracontractual damages to CSI under Section 155 of the Illinois Insurance Code.

Section 155 permits an insured to seek extracontractual damages from an insurer in any case in which at least one of three issues remains undecided: (1) the insurer's liability under the policy, (2) the amount of the loss payable under the policy, or (3) whether there was an unreasonable delay in settling a claim.

None of these three threshold issues remains undecided here: (1) Selective's liability under its policy with CSI was resolved by the Illinois Appellate Court in 2015; (2) the amount of loss payable by Selective to CSI under the policy was determined by the Illinois Appellate Court in 2017; and (3) CSI does not seek recovery for any unreasonable delay by Selective in settling CSI's claim. In summary, none of CSI's extracontractual issues remains undecided. As a result, CSI cannot pursue Section 155 damages in this action.

This result is admittedly atypical. Section 155 claims usually proceed right alongside breach-of-contract claims, such as the other claim brought by CSI in this suit. But the lengthy history of this case breaks the mold. We therefore reverse the decision of the district court granting relief to CSI under Section 155.

## I. BACKGROUND

CSI imports and sells writing markers. In 2012, a competitor sued CSI in Oregon federal court for allegedly selling copy-cat products. CSI turned to its insurer, Selective, for a defense. But Selective refused for what the district court here believed were dubious reasons.

Selective then sued CSI in Illinois state court for a declaration that it did not owe CSI a duty to defend. While this Illinois action was pending, CSI settled the Oregon action in 2013 for $0 and an injunction requiring it to stop selling the allegedly counterfeit markers.

The Illinois court granted summary judgment in favor of CSI after concluding that Selective did owe CSI a defense in the Oregon action. In 2015, that decision was affirmed by the Illinois Appellate Court, which also held in 2017 that Selective owed CSI the $195,000 it spent in the Oregon action from the time the action commenced until it settled. All other expenses fell outside the scope of the policy.

CSI filed this federal action now on appeal while the Illinois state action was still ongoing. In this suit, CSI alleges in Count I that "Selective's refusal to grant coverage to CSI and defend it under the Policy, and its failure to pay CSI's fees and expenses in the Underlying Oregon Action for over one year after having been judicially determined to have a duty to defend CSI is vexatious and unreasonable in violation of Section 155 of the Illinois Insurance Code." On this count, CSI seeks extracontractual damages including attorney fees and $60,000 in penalties.

In Count II, CSI alleges that Selective breached its insurance contract with CSI. On this claim, Selective seeks to recover "all available damages for Selective's breach of the contract, including, but not limited to, consequential damages," such as "unnecessary legal fees and expenses [incurred] defending itself and seeking indemnification in the Underlying Oregon Action, and in pursuing payment from Selective."

In 2017, the federal district court granted CSI partial summary judgment, finding that Selective breached its insurance contract with CSI by failing to provide coverage and defend CSI in the Oregon action. The federal court left the issue of CSI's contractual damages for a later trial.

The federal district court then held a bench trial on CSI's Section 155 claim in 2018. The district court found that Selective's refusal to defend CSI in the Oregon action or to supply insurance coverage to CSI was vexatious and unreasonable and thus warranted Section 155 damages of $2,846,049.34.

The federal court directed entry of final judgment under Federal Rule of Civil Procedure 54(b) on CSI's Section 155 claim. The breach-of-contract claim is still pending.

Selective now appeals the federal district court's Section 155 decision. On appeal, CSI filed a motion for sanctions against Selective under Federal Rule of Civil Procedure 38 for filing a frivolous appeal.

## II. ANALYSIS

Following a bench trial, we review *de novo* the district court's legal conclusions, such as the interpretation of Section 155. *See Acheron Med. Supply, LLC v. Cook Med. Inc.*, 958 F.3d 637, 642 (7th Cir. 2020) (citing *Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 379 (7th Cir. 2010)).

Section 155 "limits and refines recovery for the tort of vexatious and unreasonable delay." *Mohr v. Dix Mut. Cnty. Fire Ins. Co.*, 493 N.E.2d 638, 643 (Ill. App. Ct. 1986) (citations omitted). It states in relevant part:

> In any action by or against a company wherein there is in issue [1] the liability of a company under a policy or policies of insurance or [2] the amount of the

> loss payable thereunder, or [3] for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees [and] other costs.

215 Ill. Comp. Stat. 5/155 (2020).

According to Illinois courts, "[t]he language of this section is entirely plain." *Neiman v. Econ. Preferred Ins. Co.*, 829 N.E.2d 907, 914 (Ill. App. Ct. 2005). Section 155 does not create a cause of action but rather "provides an extracontractual remedy for policyholders who have suffered unreasonable and vexatious conduct by insurers with respect to a claim under [a] policy." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 902 (Ill. 1996); *accord Hennessy Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 770 F.3d 676, 679 (7th Cir. 2014) (holding that Section 155 "provides a remedy in a specified type of 'action' (case); it does not create a cause of action; it presupposes rather than authorizes a suit").

Indeed, "[t]he statute begins by stating that it applies to those insurance cases where one of three issues remains undecided: [1] the liability of the insurer, [2] the amount owed under the policy, or [3] whether a delay in settling a claim has been unreasonable." *Neiman*, 829 N.E.2d at 914.

None of those three threshold issues remains undecided here.

*1. Selective's Liability*

Two Illinois cases make our decision on the first threshold issue quite straightforward. In *Neiman*, the Illinois Appellate Court held that the first potential issue did not permit the

Section 155 claim before it because an underlying judgment "already found that defendant, as the insurer, was liable under the policy to plaintiffs." *Id.*

Similarly, in *Pryor v. United Equitable Insurance Co.*, the case could not fall under the first Section 155 category "because the liability of the insurer … w[as] determined during arbitration." 963 N.E.2d 299, 302 (Ill. App. Ct. 2011).

As in *Neiman* and *Pryor*, Selective's liability under the policy was fully decided in 2015 when the Illinois Appellate Court held that the Oregon action "triggered Selective's duty to defend Creation Supply."

CSI does not offer any argument suggesting otherwise. Instead, CSI repeats many times that no authority—especially not our decision in *Hennessey*—requires Section 155 claims to be brought in the same action in which the duty to defend is decided.

We agree. But one of the three threshold issues (of which liability under the policy is just one) must remain undecided. And this counterargument admits that Selective's liability under the policy at issue was decided in 2015.

*2. CSI's Amount of Loss Payable Under the Policy*

*Neiman* and *Pryor* also provide guidance on whether the amount of loss payable under the policy remains undecided. In *Neiman*, the amount of loss payable was already decided by an underlying judgment that found that the defendant-insurer "was liable under the policy to plaintiffs in the amount remaining thereunder: $8,740 plus costs." 829 N.E.2d at 914. And in *Pryor*, "the amount owed under the policy w[as] determined during arbitration." 963 N.E.2d at 302.

We see no daylight between the case before us and *Neiman* and *Pryor*. CSI settled the Oregon action (which was the only action covered by the policy) for $0. Then, in 2017 the Illinois Appellate Court held that, under the policy, Selective owed $195,000 to CSI for expenses incurred in the Oregon action from the time it started until CSI settled it and terminated Selective's obligations.

To put a fine point on it, the Illinois Appellate Court defined the precise scope of CSI's policy with Selective as follows:

> The [Oregon action] plaintiffs and Creation Supply settled all their claims and counterclaims on July 29, 2013. The Oregon court dismissed the underlying lawsuit against Creation Supply on August 19, 2013 without prejudice pursuant to the settlement agreement. Therefore, as of August 19, 2013, the covered claims for intellectual property infringement fell out of the case through settlement, which precluded the possibility of a duty to indemnify after that date and ceased the duty to defend.

*Selective Ins. Co. of the Se. v. Creation Supply, Inc.*, 2017 IL App (1st) 161899-U, ¶ 58.

Then, based on that definition of the policy's scope, the Illinois Appellate Court excluded from its award to CSI various costs that arose after the settlement because they were not covered by the policy. Thus, the only loss payable under the policy was the $195,000 that CSI spent in the Oregon action before reaching settlement—nothing more and nothing less. And that means there's nothing left to decide about the amount that Selective owed to CSI under the policy.

What CSI seeks now are consequential damages that, as the district court aptly stated, are "the amount of loss payable *by virtue of the breach of contract* already found by the Court." But that loss is not, as the district court held, the same as the amount owed *under the policy*. As stated, the Illinois Appellate Court already determined the amount due under the policy in 2017.

CSI again does not directly refute this conclusion by pointing to some undecided amount still due under the policy. Instead, CSI sketches yet another straw man and argues that Selective is asking the court to hold that a request for consequential damages, like the request here, precludes a Section 155 claim.

Selective has not in fact made such an argument, and we agree with CSI that such a position would be incorrect. Consequential damages are perfectly permissible alongside a Section 155 claim. *See Mohr*, 493 N.E.2d at 643 (permitting a claim for consequential damages and a claim under Section 155 in the same action). And consequential damages may be recovered after an insurance contract is breached. *Clark v. Standard Life & Acc. Ins. Co.*, 386 N.E.2d 890, 898 (Ill. App. Ct. 1979).

But though permissible, the consequential damages at issue in this case are only those damages that arose outside of the policy's purview; the Illinois Appellate Court already awarded all of the damages that arose under the policy.

CSI also asserts, without elaboration, that it seeks "compensatory damages." But we see nothing in the complaint that brings compensatory damages (which we assume means "the amount of loss payable under the policy") into the case.

Further, we don't see how such damages could come into play, as they were already awarded by the Illinois Appellate Court. The district court seemed to agree as well by stating that its ruling on the Section 155 claim would "be followed by a trial for *consequential damages and fees*, if any, sustained by CSI due to Selective's breach of its insurance contract."

In sum, any amount due to CSI under its policy with Selective has already been resolved and thus cannot support a Section 155 claim.

### 3. Selective's Unreasonable Delay in Settling CSI's Claim

What's left is the third threshold issue—whether Selective unreasonably delayed settling a claim. For this "portion of the statute to be operational, there must have been an unreasonable delay in the 'settling of a claim,'" as opposed to a delay in paying a "judgment." *Neiman*, 829 N.E.2d at 915. The *Neiman* court defined "claim" as a "[d]emand for money or property as of right, *e.g.* insurance claim." *Id.* (alteration in original) (citing *Claim*, Black's Law Dictionary 247 (6th ed. 1990)). And it defined "judgment" as "[t]he official and authentic decision of a court of justice upon the respective rights and claims of the parties to an action or suit therein litigated." *Id.* (citing *Judgment*, Black's Law Dictionary 841–42 (6th ed. 1990)).

In that case, "the underlying cause was well beyond the point of a claim, or even of a settlement, when plaintiffs filed the section 155 suit. In fact, a judgment had already been entered on the underlying suit—on August 3, 2001, for a sum certain." *Id.* "Accordingly, a 'claim' was no longer in existence, as necessitated by the statute, but, rather, a judgment had been instituted, foreclosing any remaining issues with respect

to the underlying cause." *Id.* Thus, a "claim" no longer existed in the case before it, and a Section 155 action could not proceed.

The suit before us likewise does not seek damages for any unreasonable delay in settling a claim. Instead, as in *Neiman*, "the underlying cause [in the Oregon action i]s well beyond the point of a claim, or even of a settlement." *Id.* It was put to bed by the 2013 settlement and by the Illinois Appellate Court's 2015 and 2017 decisions regarding Selective's liability and the amount due under the policy. So the only issue here is whether Selective unreasonably delayed paying the Illinois court's judgment relating to fees, not whether it delayed settling an insurance claim made by CSI.

In fact, CSI highlights its allegations that Selective failed to pay CSI's fees and expenses in the Oregon action "after having been judicially determined to have a duty to defend" or "after the [Illinois] Appellate Court affirmed … that Selective owed CSI a duty to defend." These allegations prove the point—Selective allegedly failed to timely pay on a *judgment*; it did not allegedly fail to timely settle a *claim*.

CSI also made this point plain as day in its summary judgment briefing before the district court, which stated, "Selective acted vexatiously and with delay after it was found to have a duty to defend. … On December 19, 2013, the Circuit Court found that Selective owed CSI, a duty to defend in the Oregon Action … . On January 7, 2014, CSI … asked to be paid under the December 19 *Judgment*" (emphasis added).

\* \* \*

Section 155 spells out in black and white that at least one of three threshold issues must remain undecided for a Section

155 claim to stand. Because none of those issues remains undecided here, CSI's Section 155 claim cannot proceed. Nevertheless, CSI raises the following unpersuasive counterarguments.

To start, CSI recites over and over again that this is not a "stand-alone" Section 155 claim as Selective argues. This case instead involves two claims: one for Selective's breach of contract and one under Section 155. And courts have often said that a Section 155 claim can be brought alongside a breach-of-contract claim. *See, e.g.*, *Cramer*, 675 N.E.2d at 904 ("[I]n conjunction with a breach of contract action, section 155 provides the remedy to policyholders for insurer misconduct that does not rise to the level of a well-established tort."); *Keller v. State Farm Ins. Co.*, 536 N.E.2d 194, 198 (Ill. App. Ct. 1989) (permitting a Section 155 claim to proceed alongside a breach-of-contract claim). Thus, CSI argues that its Section 155 claim may proceed by virtue of its breach-of-contract claim.

Most of the above argument is correct: CSI has not brought a "stand-alone" Section 155 claim; CSI has also brought a breach-of-contract claim; and Section 155 claims often accompany breach-of-contract claims, as noted in *Cramer* and *Keller*. But CSI's conclusion—that its Section 155 claim may proceed—is wrong.

Why? Because it commits what logic books call the "fallacy of the undistributed middle." *See* David Kelly, The Art of Reasoning 243 (3d ed. 1998) ("In a valid syllogism, the middle term must be distributed in at least one of the premises.").

Think of CSI's argument like this:

1. A Section 155 claim can accompany a breach-of-contract claim.
2. This case includes a breach-of-contract claim.
3. Therefore, a Section 155 claim can accompany this case.

The problem is that the middle term—"breach-of-contract claim"—is "undistributed," meaning it does not refer to *all* breach-of-contract claims. So the conclusion does not flow from the premises.

Here's an example that is easier to digest:

1. Markers come in boxes.
2. An egg carton is a box.
3. Therefore, markers come in egg cartons.

But of course they don't. Not *all* boxes carry markers. Just some, and egg cartons aren't among them.

So too, not *all* breach-of-contract claims permit an accompanying Section 155 claim. Just those for which "one of three issues remains undecided: the liability of the insurer, the amount owed under the policy, or whether a delay in settling a claim has been unreasonable." *Neiman*, 829 N.E.2d at 914. And the breach-of-contract claim in this case is not among them.

CSI also points to what it says are two cases in which Illinois courts did exactly what CSI asks us to do today—ignore the statute and permit a Section 155 claim even in the absence of any undecided threshold issue. But neither case did that.

First, in *Estate of Price v. Universal Casualty Co.*, an arbitrator ordered the defendant-insurer to pay $20,000 plus costs and interest under an insurance policy to the plaintiffs. 750

N.E.2d 739 (Ill. App. Ct. 2001). The defendant refused to pay
in full. Then, as the Illinois Appellate Court has explained,

> the plaintiff filed a complaint with two counts: to
> confirm the arbitration and thereby enter a formal
> judgment against the defendant, and to recover sec-
> tion 155 damages. Thus, the section 155 allegations
> went hand-in-hand with a demand for judgment
> against the defendant in the amount of the arbitra-
> tor's award—a judgment that had yet to be declared.
> This situation, then, amounted to a delay in the set-
> tlement of a claim where the issue of liability had yet
> to be resolved. Because issues were still open, sec-
> tion 155 was applicable and remand was appropri-
> ate for a determination in this regard.

*Neiman*, 829 N.E.2d at 916 (citing *Price*, 750 N.E.2d at 739).

Similarly, in *Siwek v. White*, the plaintiffs brought their Sec-
tion 155 claim in the same action in which they sought "to es-
tablish insurance coverage for [an] accident." 905 N.E.2d 278,
285 (Ill. App. Ct. 2009). So the insurer's liability under the pol-
icy was in issue and permitted the Section 155 claim.

Last, CSI makes the colorable argument that its Section 155
claim must stand because the Illinois Circuit Court, in 2013,
dismissed the claim without prejudice and stated that "CSI's
rights are expressly reserved to maintain its action against Se-
lective in Federal Court … regarding claims of breach of con-
tract and violation of Section 155."

The Illinois Circuit Court was not wrong at the time it
made this reservation, which was long before Selective's lia-
bility and the amount owed under the policy were resolved.
But now those issues have been resolved. And though it con-
cerns us that CSI is unable to pursue an avenue for relief that

another court left open to it, Section 155 leaves us with no options.

### III. CONCLUSION

For the foregoing reasons, we REVERSE the decision of the district court and REMAND the case for the district court to dismiss CSI's Section 155 claim and to carry out further proceedings consistent with this opinion to resolve the remaining issue of breach-of-contract damages.

Further, because this appeal has merit, CSI's motion for sanctions under Federal Rule is Appellate Procedure 38 is DENIED.